IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | C/A No. 4:19-cr-00917 |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Javon Ladonte Seward, | ) | |
| | ) | |

This matter comes before the Court on Defendant's [37] Motion to Suppress. The Government filed a Response in Opposition, and Defendant filed a Reply. ECF Nos. 40–41. The Court held a hearing on the Motion on July 7, 2020. ECF No. 55. Following the hearing, the Government filed a Supplemental Response in Opposition, and Defendant filed a Supplemental Reply. ECF Nos. 58–59.

There are two traffic stops at issue in this case.

First, Defendant was stopped by the Andrews Police Department on August 8, 2019. During the traffic stop, officers learned that Defendant's driver's license was suspended and that the car was not insured. Therefore, officers arranged to have the car towed. Prior to the car being towed, officers conducted an inventory search of the vehicle and located a Crown Royal bag containing two sandwich bags filled with a white powdery substance. Additionally, officers found two firearms in a bundle of clothing Defendant was holding immediately prior to being arrested. Defendant contends that the Andrews Police Department does not have standardized criteria for conducting inventory searches; therefore, Defendant seeks exclusion of the Crown Royal bag and its contends.[1] Defendant did not move to suppress the firearms, as they were not located during an inventory search.

---
[1] At the hearing, the Government indicated that the white powder tested negative for controlled substances.

1

Second, on October 9, 2019, a Deputy with the Georgetown County Sheriff's Office ("GCSO") stopped Defendant for speeding. During the stop, the Deputy learned that Defendant's driver's license was suspended. The Deputy placed Defendant under arrest and arranged for the vehicle to be towed. Prior to having the car towed, the Deputy and another officer conducted an inventory search of the vehicle, during which they located a firearm with its serial number removed.

"'The Fourth Amendment generally requires police to secure a warrant before conducting a search.'" *United States v. Matthews*, 591 F.3d 230, 234 (4th Cir. 2009) (quoting *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)). However, there are several exceptions to the warrant requirement. *Id.* One such exception is the inventory search doctrine. *Id.* "Police officers frequently perform inventory searches when they impound vehicles or detain suspects." *Id.* at 235 (citations omitted). "For the inventory search exception to apply, the search must have 'be[en] conducted according to standardized criteria,' such as a uniform police department policy and performed in good faith." *Id.* (quoting *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)) (internal citations and quotations omitted). The existence of standardized criteria may be proven by either written rules and regulations or testimony about standard practices. *Id.*

Initially, the Court finds that both searches were performed in good faith; however, Defendant raises valid issues with whether officers in each stop complied with standardized criteria. As to the Andrews Police Department stop, the Court finds that the officers did not comply with standardized criteria. The Andrews Police Department has a Model Policy and Procedures Manual, which was introduced as evidence during the hearing. The Manual states:

> An officer may, pursuant to the Department's care-taking policy, conduct a routine warrantless inventory of the entire vehicle, reasonable to care-taking function, including the glove compartment and containers, of any lawfully impounded automobile. Warrantless inventories are justifiable means of

> protecting the owner's property, protecting the Department against claims of lost or stolen property, and making sure that no weapons or other dangerous instruments fall into the hands of vandals or thieves.

Essentially, the Manual simply restates that the inventory search doctrine is an exception to the warrant requirement. However, the Andrews Police Department does not have its own written policies and procedures about how to conduct the inventory. Instead, the Manual contains an insert, which is merely a copy of the GCSO inventory search criteria. Testimony at the hearing indicated that officers are unfamiliar with the policies in the GCSO portion of the Manual, and the Court finds that the inventory search of Defendant's vehicle by the Andrews Police Department was not conducted pursuant to any specific criteria, much less a standardized criteria.[2] Accordingly, the Court grants Defendant's Motion as to the first traffic stop, and the Crown Royal bag and its contents are excluded.

As to the second stop, the GCSO does have written policies and procedures for conducting an inventory search. The Policy states:

> The *inventory* should be conducted by two (2) deputy sheriffs, and the interior and exterior of the vehicle photographed. Non-evidentiary items of significant value found in the vehicle should be removed for safekeeping and afforded adequate security. Contraband or evidence found in the vehicle should be immediately seized and preserved in accordance with existing procedures governing the seizure of physical evidence. A receipt should be given for all items removed from the vehicle. If the doors, the glove compartment, the trunk, or any other containers therein are locked or otherwise sealed, great care should be taken to minimize damage to property while gaining access to conduct the *inventory*.

Here, the GCSO Deputy that initiated the traffic stop testified that he was familiar with the GCSO inventory search policy. During his testimony, he stated that he believed his Sergeant assisted in conducting the inventory; however, he acknowledged he was "not 100 percent sure."

---

[2] The Court notes that the officer who initiated the stop testified that his written report was altered after he submitted it to his supervisors. No explanation was provided by the Government for the alterations.

3

Thereafter, the Sergeant testified that he remained with Defendant while the Deputy conducted the inventory search here.  Additionally, the Deputy testified that there were no photographs taken of the interior or exterior of the vehicle, which is a violation of the plain language of the written policy.

Although this case presents a close question, the Court finds that suppression is required. The Policy states that "[t]he *inventory* should be conducted by two (2) deputy sheriffs" and further requires that the interior and exterior of the vehicle be photographed.  The Court finds that two Deputy Sheriffs did not "conduct" the inventory search and further finds that no photographs of the vehicle were taken.  The Court understands that the practicalities of the situation dictated that Defendant could not be left unattended; however, GCSO could have dispatched another Deputy Sheriff to the scene to assist in the inventory search or the inventory search could have been conducted after Defendant left the scene.  Though there is case law finding that the failure to comply with all aspects of an inventory search policy does not require suppression, those cases are limited to situations where the policy was substantially complied with or there were exigent circumstances not applicable here.  *See, e.g.,* ECF No. 58 at 1–2 (containing cases compiled by the Government).  Here, the Deputy Sheriffs did not substantially comply with the Policy.  To allow the Government to use evidence obtained during the inventory search would render the Policy meaningless.  Accordingly, the Court grants Defendant's, and the firearm seized by GCSO is suppressed.

## CONCLUSION

For these reasons, Defendant's Motion to Suppress, ECF No. 37, is **GRANTED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>
United States District Judge

August 7, 2020
Spartanburg, South Carolina